Andrew Schuster v. T. H. Gamble, Appellant.

Partition: SETTLEMENT.  Where a county contracted with two persons to drain a lake, one of them, in consideration thereof, to be given a deed of a part of the lake bed, and the other the balance; but, by reason of a dispute between such persons as to the proportion in which they should bear the cost of a certain drain, the county, instead of deeding to them such parts severally, executed a deed to the two conveying all the land, the deed reciting that the land had been drained by them pursuant to their contract with the county, the land should be partitioned between them as provided by their contract with the county, and not on the basis that, by the deed, each received an undivided half, they having made no agreement between themselves to accept said deeds as a settlement of their controversy.   -

*Appeal from Webster District Court.*—Hon. B. P. Birdsall, Judge.

Tuesday, October 26, 1897.

Action for partition of real estate.  The plaintiff claimed an undivided one-half thereof, and the district

court so found, and entered decree as prayed. Defend-
ant appeals.—*Reversed.*

*Wright & Nugent* for appellant.

*Botsford, Healy & Healy* for appellee.

LADD, J.—A slough or lake bed, known as "Bass
Lake," had been meandered in the original survey, and
was situated in the east quarter of section 4, the north-
west quarter of section 3, the southwest quarter of sec-
tion 3, and in the northwest quarter of section 10, in
township 90 north, of range 29 west of fifth P. M.
Webster county assumed to own this lake bed, and
in 1885 its board of supervisors adopted this resolution:
'*Resolved*, that a committee of this board be appointed
to enter into a contract with said Gamble & Schuster to
drain said lake or slough in a complete and satisfactory
manner, and that when the said lake is drained to the
satisfaction of this board, as full compensation for the
labor and expense of said drainage, this board cause to
be delivered a quitclaim deed to said Gamble & Schuster
for the part of the lake lying north of the half section
lying on section 3 and 4, 90—29, and that a part of said
lake bed situated on the southwest quarter of section
3, and the northwest of section 10—90—29, Webster
county, Iowa, and not otherwise. The part lying north
of one-half section line of 3 and 4 to be deeded to T. H.
Gamble, and the balance to Andrew Schuster." In
pursuance of the provisions of this resolution, Gamble
dug the ditches necessary to drain that portion of the
lake bed north of the half section line through sections
3 and 4, and next to his land, and the plaintiff dug a
ditch draining that portion of the lake bed lying in the
southwest quarter of section 3 next to land owned by
him. In order to complete the drainage it was necessary
to extend the ditch from the lower end of Bass Lake

through a part of section 10, and in section 9 to Bass
Creek, a distance of about seventy rods. A dispute
arose concerning the proportion of the cost of digging
this ditch each should pay; the plaintiff insisting that
the expense ought to be in proportion to the amount of
land each would receive, and the defendant that each
ought to pay one-half thereof. This was dug by the
plaintiff at an expense of twenty-five cents per rod, and
the defendant refused to pay any part thereof, because,
as he claimed, the plaintiff had failed to connect the
east ditch on the northeast quarter of section 3 with the
main ditch in the southwest quarter of section 3, as
had been agreed, and as was necessary in order to carry
off the water. Owing to this controversy, the county
did not convey the land to the parties for several years,
but in 1889 executed a quitclaim deed running to
Gamble and Schuster, conveying all the land in the lake
bed, and containing this clause: "Said lake bed or
slough having been drained by said Gamble and
Schuster in pursuance of contract entered into by and
between said parties and the board of supervisors of
Webster county, Iowa, as authorized by resolution of
said board, adopted at the January session, 1885, of
said board." In reply it is alleged that this deed was
made by the county in pursuance of a settlement
entered into by and between the plaintiff and defend-
ant that such quitclaim deed should be executed, and
each receive an undivided half interest in the land
drained; and the only question for our determination
is whether there was such a settlement, and, if so,
whether the deed was made in pursuance thereof.

The plaintiff does not claim in his testimony that
he entered into such an agreement with the defendant.
On the contrary, he says that, after receiving the deed,
he withheld it from record over two years, that he and
the defendant might settle between themselves, and
that they could not do so. After receiving the deed,

he told Gamble that, upon the payment of expense belonging to him, he would let him have the land. He does not say that Gamble was before the board of supervisors at the session the deed was executed, but testifies that at the previous session Gamble had said: "We would settle among ourselves." Gamble testifies that he was not before the board during the session at which the deed was executed, and refused to accept it, because not drawn in accordance with the resolution, but told the auditor he might mail it to him, and he would see if he could settle with Schuster. He asked Schuster's attorneys to have Schuster try to get the county to give a quitclaim deed, so that they might divide the land. The testimony of neither party indicates a settlement, or that the deed was issued in pursuance of a settlement between them. Surely, if there had been a settlement, the very parties alleged to have made it ought to know something of the transaction. After the execution of the deed, Gamble continued to occupy all the land drained, north of the half section line running through sections 3 and 4, and Schuster that below, according to the resolution. There was no occasion for Gamble to ask for a division of the land, as he was already in possession of that to which he was entitled. Appellee insists that the testimony of Ainsworth and Wolfinger establishes the settlement alleged. The former was a member of the board of supervisors, and says that a deed was recommended "and for some reason or other it was not agreed to." There is nothing in the testimony of Wolfinger concerning any settlement between the parties. While some circumstances tend slightly to show that the deed might have been executed in adjustment of differences, the weight of evidence establishes to our satisfaction that the county, believing that the land had been properly drained, executed the joint deed, instead of separate deeds, as pro-

vided in the resolution, in order to avoid participation in the controversy between these parties, and that the deed was taken in that form to enable them to settle between themselves. Gamble had ditched six hundred and seven and one-fourth rods on the land claimed by him, while Schuster had ditched one hundred and seventy-two and one-half rods on the land below the half section line. After doing this amount of work, it is unreasonable to suppose that Gamble would yield a quarter of his land in settlement of the dispute, involving but a small item for ditching. The quitclaim deed clearly recognizes the resolution, and that the lake bed has been drained as therein required, and in accordance therewith the land must be partitioned. The defendant agreed to pay one-half of the ditch from the lake bed to Bass Creek, amounting to eight dollars and seventy-five cents, and he should also pay one-half of the reasonable value of the labor in digging out and keeping it in repair up to the time the deed was executed by the county, which amounted to forty-five dollars, making fifty-three dollars and seventy-five cents in all. The land will be partitioned so as to give the defendant all the lake bed in the northeast quarter of section 4 and the northwest quarter of section 3, and the defendant all that lying in southwest quarter of section 3 and northwest quarter of section 10. Judgment will be entered against the defendant in the sum of fifty-three dollars and seventy-five cents, with interest at the rate of six per cent. per annum from January 1, 1889, and made a lien on his land. Each party will pay one-half of the costs in this and the district court. The decree of the district court is REVERSED.